**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

**26-7415**

MARION COUNTY, a political subdivision of the State of Oregon,
Plaintiff-Appellant,

and,

SANTIAM WATER CONTROL DISTRICT, and CITY OF STAYTON, an Oregon municipal corporation,
Intervenor-Plaintiffs,

v.

U.S. ARMY CORPS OF ENGINEERS; DANIEL P. DRISCOLL, in his official capacity as Secretary of the Army; and WILLIAM H. GRAHAM, JR., in his official capacity as Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers,
Defendants-Appellees,

and,

NORTHWEST ENVIRONMENTAL DEFENSE CENTER and NATIVE FISH SOCIETY,
Intervenor-Defendants-Appellees.

On Appeal from the United States District Court
for the District of Oregon
Case No. 6:26-CV-00956-MTK

---

**26-7451**

CITY OF SALEM, an Oregon Municipal Corporation,
Plaintiff-Appellant,

and,

SANTIAM WATER CONTROL DISTRICT, and CITY OF STAYTON, an Oregon municipal corporation,
Intervenor-Plaintiffs,

v.

UNITED STATES OF AMERICA, and UNITED STATES ARMY CORPS OF ENGINEERS, an agency of the United States Government,
Defendants-Appellees,

and,

NORTHWEST ENVIRONMENTAL DEFENSE CENTER and NATIVE FISH SOCIETY,
Intervenor-Defendants-Appellees.

On Appeal from the United States District Court
for the District of Oregon
Case No. 6:26-CV-1381-MTK

---

**PLAINTIFFS-APPELLANTS' MARION COUNTY, SANTIAM WATER CONTROL DISTRICT and CITY OF STAYTON'S REPLY**

Steve Elzinga
Marion County Counsel
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
selzinga@co.marion.or.us

*Attorneys for Marion County*

Ryan Adams
Fir Law Group
PO Box 35
Silverton, OR 97381
Ryan@FirLawGroup.com
(503) 383-1640

*Attorneys for Marion County, City of Stayton, Santiam Water Control District*

To protect clean water and preserve the status quo, this Court should issue an injunction pending appeal. Plaintiffs satisfy all four elements of *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

**1. Plaintiffs are likely to succeed on the merits.**

A "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." 5 U.S.C. § 706 (2)(A). The Clean Water Act (CWA) safeguards water quality for both people and fish. The CWA and the Endangered Species Act (ESA) are separate, co-equal statutory mandates. Federal Defendants must comply with both independently. Even the sincerest "test" of a recommended fish-passage measure in a biological opinion is not a license to violate the CWA.[1] *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 384 F.3d 1163, 1171 (9th Cir. 2004) ("The Corps's full compliance with the recommended steps outlined in the 2000 BiOp did not necessarily mean that the Corps fulfilled its obligations under the CWA. An independent analysis of the Corps's compliance with the requirements of the CWA is required.").

CWA Section 313 requires federal agencies to "comply with" state water-quality standards "in the same manner, and to the same extent as any

[1] Federal Defendants mistakenly argue that Marion County did not preserve CWA/APA arguments. Federal Response at 18-19. All three Plaintiffs in this appeal joined the CWA/APA arguments in Salem's motion at the district court. ECF 37; ECF 36; ECF 40. Marion County made extensive and detailed arguments regarding CWA violations that mirror the arguments in this motion. ECF 73 at 16-22.

nongovernmental entity." 33 U.S.C. § 1323(a). Oregon's numeric turbidity criterion prohibits more than a ten-percent cumulative increase over natural upstream background. OAR 340-041-0036. The Corps selected annual deep drawdowns without determining that the operation will meet that criterion (or Oregon's narrative criteria or antidegradation policy), even though it acknowledged the operation will result in "substantially more adverse" turbidity (SEIS, p. 213) and that "the exact amount of turbidity in any given year cannot be accurately predicted," ECF 68 at 30–32.

**2. Plaintiffs have shown irreparable harm.**

Trying to distance themselves from the repeated admissions in the SEIS that the Detroit drawdown will create adverse turbidity, both responses repeatedly point to 2015 and 2019. However, drawdown depth is just one factor in the turbidity equation. Other key turbidity factors are low-pool duration and how fast water is drained. Federal Defendants' own declaration admits that "release patterns" are a key factor in turbidity, ECF 69 at 13, and that keeping low-pool conditions shorter helps "minimize the risk of sediment mobilization," *id.* at 15-16. The 2015 and 2019 low-pool conditions were 500% and 1,400% shorter than the current plan, and the 2015/2019 release patterns (i.e. draining speed) were far less violent.

In 2015, Federal Defendants took 32 days from September 29 to October 30 to slowly drop from 1450 minimum conservation pool down to 1425, and then they

stayed at 1425 for only one day before immediately climbing back to 1450 by November 19. ECF 18 at 16-18.

In 2019, Federal Defendants took 36 days from November 20 to December 26 to slowly drop from 1450 minimum conservation pool down to 1425, and then they stayed close to 1425 for only five days until January 1 before quickly climbing back to 1440 by January 11 and 1450 by January 21. *Id.* Both times there were refill delays that prevented all or part of spring spillway fish passage. ECF 18 at 33-35.

Here, Federal Defendants plan to quickly drop at least 25 feet in 14 days and then hold at the low-pool level for another 14 days before beginning refill. SEIS at 19. Their plan drains water much more quickly (dropping 25 feet in only 43% of the time as 2015 and only 39% of the time as 2019) and intentionally stays at the lowest pool level that exposes sediment for much longer (500% and 1,400% longer).

Federal Defendants admit another turbidity factor is sediment characteristics at the time of the drawdown. ECF 69 at 13. The SEIS acknowledges that "[t]here is a causal relationship between wildfires and increased sediment supply observed in the Pacific Northwest and elsewhere." SEIS, Appendix C at C-1-15. In the fire season following the 2019 drawdown, the watershed that feeds Detroit Reservoir saw large catastrophic wildfires. SEIS at 172; *see also* ECF 26-2 at 145 (EIS Sec.

3.6.2.3). The Beachie Creek Fire and the Lionshead Fire burned hundreds of thousands of acres in the region in 2020. *Id.* One impact of these fires was the destabilization of soil in the watershed, leading to greater erosion and deposition of sediment in Detroit Reservoir because wildfires increase basin sediment, *see* SEIS, Appendix C at C-1-15, and the SEIS recognizes that Detroit Reservoir traps 91% of the sediment it receives, SEIS, Appendix C at C-ES-7. Sediment supply that increased in 2020 could not have washed away in 2015 or 2019. *See also* ECF 75 at 4-6 (explaining this argument in more detail).

Regardless, Federal Defendants admit that their plan will result in "substantially more adverse" turbidity, (SEIS, p. 213), and "would result in adverse effects to drinking water facilities," SEIS, p. 218. Even the district court recognized that "the pilot testing demonstrates that the water filters at issue" will have "reduced runtimes" due to a drawdown. ECF 104 at 4. That is just another way of saying the filters will have "increased maintenance costs." Intervenors admit this. Intervenor Response at 17-18. This Court need not even reach the district court's erroneous evidentiary evaluation of irreparable harm because, at a minimum, the district court failed to apply the correct legal result of the district court's own evidentiary findings. When Federal Defendants disclaim any responsibility to pay for the very costs that they admit they will cause, that creates irreparable harm. *Washington v. Trump,* 145 F.4th 1013, 1036-37 (9th Cir. 2025).

Any amount of irreparable harm—"irrespective of the magnitude of the injury"—is enough to satisfy the irreparable harm prong of the *Winter* test. *Id*. (emphasis added). That allows this Court to focus on what matters most: the merits and equities.

**3. The balance of equities and public interest sharply favor Plaintiffs.**

This preliminary injunction does not concern 54 of 55 actions recommended by the 2024 Biological Opinion (BiOp). Plaintiffs seek to pause just one action the BiOp describes as to "test and improve effectiveness" (BiOp 6.4-524) that: (1) has not been proven to help fish, (ECF 20),[2] (2) has created major problems when tested at nearby reservoirs (e.g. killing thousands of Kokanee salmon and destroying water filters), and (3) Federal Defendants admit will result in "substantially more adverse" turbidity (SEIS, p. 213), endangering clean drinking water for hundreds of thousands of Marion County residents and harming schools, hospitals, businesses, farmers, recreation, fish, public services, and the environment. There is a fundamental public interest in safe drinking water. *United States v. Alisal Water Corp.*, 431 F.3d 643, 656 (9th Cir. 2005).

[2] "Many" fish will be injured or killed by a drawdown, and reduced water quality will have at least a "minor adverse effect" on fish below the dam. SEIS at 137-38.

Respectfully Submitted this 20th day of November, 2026

MARION COUNTY, CITY OF STAYTON, AND SANTIAM WATER CONTROL DISTRICT

By: *s/ Ryan Adams*
Ryan Adams, OSB #150778
Fir Law Group
PO Box 35
Silverton, OR 97381
Ryan@FirLawGroup.com
(503) 383-1640

*Attorneys for Marion County, City of Stayton, Santiam Water Control District*

MARION COUNTY

By: *s/ Steve Elzinga*
MARION COUNTY COUNSEL
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
selzinga@co.marion.or.us

*Attorneys for Marion County*

## CERTIFICATE OF COMPLIANCE

This response complies with the length limits permitted by Ninth Circuit Rules 27-1 and 32-3, which together establish a word-limit of 2,800 words. The response contains 1,659 words. The type size and typeface comply with Fed. R. App. P. 27(d)(1)(E), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 20, 2026

s/ *Steve Elzinga*
Steve Elzinga

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's Appellate Case Management System (ACMS) on November 20, 2026.

I further certify that all participants in this case are registered ACMS users and that service will be accomplished via ACMS.

Dated: November 20, 2026

s/ *Steve Elzinga*
Steve Elzinga